IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND ORTIZ,

    Plaintiff,

vs.                                                    No. CIV 18-0028 JB/LF

STATE OF NEW MEXICO, NEW MEXICO
CORRECTIONS DEPARTMENT, WESTERN
NEW MEXICO CORRECTIONAL FACILITY,
a New Mexico State Corporation, WARDEN
ROBERTA LUCERO-ORTEGA of the Western
New Mexico Correctional Facility, DEPUTY
WARDEN PETE PEREZ of the Western New
Mexico Correctional Facility, CORRECTIONS
OFFICER JASON BACA of the Western New
Mexico Correctional Facility, CORRECTIONS
OFFICER GARY TRUJILLO of the Western
New Mexico Correctional Facility, STIU
OFFICER DAMIEN NUNEZ of the New
Mexico Corrections Department, STIU
OFFICER CARLOS GONZALES of the New
Mexico Corrections Department,
CORRECTIONS OFFICER JOHN BEARDEN,
SR. of the Western New Mexico Correctional
Facility, JANE DOES 1-10, and JOHN DOES
1-10, Corrections Officers, employees, and/or
administrators of the Western New Mexico
Correctional Facility,

    Defendants.

## **ORDER**[1]

**THIS MATTER** comes before the Court on: (i) the State of New Mexico Risk Management Division's Opposed Motion to Intervene, filed November 6, 2018 (Doc. 36)("Motion

---

[1]This Order disposes of the State of New Mexico Risk Management Division's Opposed Motion to Intervene, filed November 6, 2018 (Doc. 36), the Defendants Roberta Lucero-Ortega, Pete Perez, Jason Baca, Gary Trujillo, Damien Nunez, and Carlos Gonzales' Motion for Summary Judgment as to Second Amended Complaint Based on Qualified Immunity, filed December 7,

to Intervene"); and (ii) the Defendants Roberta Lucero-Ortega,[2] Pete Perez, Jason Baca, Gary Trujillo, Damien Nunez, and Carlos Gonzales' Motion for Summary Judgment as to Second Amended Complaint Based on Qualified Immunity, filed December 7, 2018 (Doc. 49)("MSJ").[3] The Court held hearings on January 16, 2019, and September 13, 2019. The primary issues are: (i) whether the Court should permit the State of New Mexico Risk Management Division ("Risk Management") to intervene in this suit under rule 24 of the Federal Rules of Civil Procedure, because Risk Management must cover liability for torts and civil rights violations committed by public employees acting under color of state law; (ii) whether the sexual contact between Plaintiff Raymond Ortiz and Defendant John Bearden was consensual; (iii) even if the sexual contact between Bearden and Ortiz was not consensual, whether Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales acted with deliberate indifference in violation of the Fourth Amendment to the Constitution of the United States of America, the Cruel and Unusual Punishment Clause of the Eighth Amendment to the Constitution of United States of America, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States of America, by drawing an inference that Bearden raped Ortiz and doing nothing about it; and (iv) whether Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales are entitled to qualified immunity with respect to Ortiz' constitutional claims. The Court concludes that: (i) Risk

---

2018 (Doc. 49). The Court will, however, issue a Memorandum Opinion at a later date more fully detailing its rationale for this decision.

[2]Defendant Roberta Lucero-Ortega was dismissed with prejudice from this suit after Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales filed the MSJ. See Stipulation of Dismissal with Prejudice, filed February 6, 2019 (Doc. 62).

[3]Defendant John Bearden also joined Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales's MSJ by filing a Notice of Joinder in the Motion for Summary Judgment as to Second Amended Complaint, filed December 18, 2018 (Doc. 53)("Bearden Joinder"). This Order only addresses the requests in the MSJ made by Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales in their MSJ. The Court will, however, issue a Memorandum Opinion at a later date addressing the requests in the Bearden Joinder.

Management may intervene, because it has shown that it has met its burden of satisfying rule 24(a)'s requirements; (ii) there is a genuine issue of material fact whether the relationship between Ortiz and Bearden was consensual; (iii) even if the relationship between Ortiz and Bearden was not consensual, Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales did not act with deliberate indifference; and (iv) Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales are entitled to qualified immunity, because Ortiz has not met his burden of demonstrating that his asserted right is clearly established. Accordingly, the Court will grant the Motion to Intervene and grant the MSJ.

As to issue (i), rule 24(a) provides for intervention of right:

(a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

   (1) is given an unconditional right to intervene by a federal statute; or

   (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The movant bears the burden of establishing its right to intervene. See United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991). To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant claims an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) the movant's interest is not adequately represented by existing parties. See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005).

Here, Risk Management has carried its minimal burden to show that it has an interest relating to the transaction that is the subject of the action, and that disposing of the action may impair or impede its ability to protect its interest. Ortiz alleges in his Second Amended Complaint to Remedy Civil Rights, filed October 31, 2018 (Doc. 30)("Complaint"), that Defendant John Bearden was a "public employee," and that he was "acting under color of law and in the course and scope of his employment" by the State. Complaint at ¶ 5, at 2. The New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -30, however, waives sovereign immunity "for personal injury, bodily injury, wrongful death or property damage resulting from . . . [the] deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12. Risk Management asserts that it "must cover, and does in fact cover, the potential liability for torts and civil rights violations committed by 'public employees' of 'governmental entities'" acting within the scope of their duties. Motion to Intervene at ¶ 7, at 4 (quoting N.M. Stat. Ann. § 41-4-23). Whereas Risk Management contends that the acts allegedly committed by Bearden were outside the scope of Bearden's duties, Risk Management asserts that Ortiz' and Bearden's interests are to the contrary -- both Ortiz and Bearden would likely argue that Bearden's acts were within the scope of his duties. See Motion to Intervene at ¶¶ 8-10, at 4-5. See also Complaint at ¶ 5. Last, Risk Management argues that the existing Defendants, as individual New Mexico Corrections Department employees, "have no apparent standing to argue the scope-of-duty issue as it relate[s] to [Risk Management's] payment of a judgment." Motion to Intervene at ¶ 10, at 5. Because Risk Management has satisfied all of the elements for intervention as a matter of right, the Court will grant the Motion to Intervene.

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986)(Brennan, J., dissenting)(emphasis in original). Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324.

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) (citing Liberty Lobby, 477 U.S. at 248). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550–55 (1999).  Fourth, the court cannot decide any issues of credibility. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States of America concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage . . . "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. at 380–81.

The United States Court of Appeals for the Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009) and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott, 550 U.S. at 380).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted). "[T]he blatant contradictions of the record must be supported by more than other witnesses' testimony[.]" Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted), aff'd, 499 Fed. Appx. 771 (10th Cir. 2012).

As to issue (ii), whether the relationship between Ortiz and Bearden was consensual remains a genuine issue of material fact. Bearden provides several romantic letters between Ortiz and Bearden indicating a consensual relationship. Affidavit of John Bearden, Sr., ¶ 4, at 1, executed November 29, 2019, filed December 7, 2018 (Doc. 49-4)("Bearden Aff."); Affidavit of Carlos Gonzales ¶¶ 9-12, at 4-5, executed November 30, 2018, filed December 7, 2019 (Doc. 49-2)("Gonzales Aff."). These letters do not, however, resolve the question of whether the alleged sexual contact and anal penetration between Ortiz and Bearden was consensual. Accordingly, Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales have not shown that the sexual contact between Ortiz and Bearden was consensual.

As to issue (iii), even if the relationship between Ortiz and Bearden was not consensual, there is no genuine issue of material fact that Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales were not deliberately indifferent toward Ortiz' health and safety.  When a prisoner is incarcerated, the Eighth Amendment protects him from "a prison official's 'deliberate indifference' to a substantial risk of serious harm," as well as from the intentional use of excessive force.  Farmer v. Brennan, 511 U.S. 825, 828 (1994)(quoting Helling v. McKinney, 509 U.S. 25, 28 (1993)).  "[N]either prison officials nor municipalities can absolutely guarantee the safety of their prisoners," but "[t]hey are . . . responsible for taking reasonable measures to insure the safety of inmates."  Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).  An official violates the Eighth Amendment when two elements are met: (i) the official causes an injury that, objectively, is "sufficiently serious," i.e., an injury that equates to the "denial of the minimal civilized measure of life's necessities"; and (ii) the official has a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. at 834 (internal quotation marks omitted).  The second condition represents the functional application of the deliberate-indifference standard.  See Smith v. Cummings, 445 F.3d 1254, 1258 (10th Cir. 2006)("To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.")(quoting Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003)).

Although Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales became aware of the relationship between Ortiz and Bearden, there is little evidence that they knew or drew an inference that the relationship was not consensual, and thus the subjective prong of the deliberate-indifference standard is not satisfied.  Gonzales and Nunez were assigned to the Security Threat

Intelligence Unit ("STIU"), which discovered several letters of a romantic nature at the prison. Affidavit of Carlos Gonzales ¶¶ 9-11, at 4, entered November 30, 2018, filed December 7, 2019 (Doc. 49-2)("Gonzales Aff."). STIU used the handwriting of the letters to trace them back to Ortiz and Bearden. See Gonzales Aff. ¶¶ 10-12, at 4-5. STIU investigated the letters and several telephone calls between Ortiz and his mother, and the "STIU Officers concluded that Ortiz and Bearden were involved in an attempt to smuggle drugs into the prison." Gonzales Aff. ¶ 13, at 5. According to Gonzales, he "and the other STIU Officers would have intervened immediately if we suspected the possibility of rape or any other unwelcome sexual contact, but, in light of everything we heard, the thought never crossed my mind." Gonzales Aff. ¶ 13, at 5. Furthermore, Perez, Baca, Trujillo, Gonzales, and Nunez "all worked the day shift, from 8:00 a.m. to 4:00 p.m."; therefore, none of them "had much if any opportunity to personally observe any of the interactions between inmate Raymond Ortiz and Officer John Bearden, who started his shift at 2:00 p.m. and worked in Housing Unit Two, which was a different, separate building from the two buildings in which [the Defendants] worked." Gonzales Aff. ¶ 15, at 6-7.

On the other hand, Ortiz proffers no evidence to support that Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales were aware that Bearden was raping Ortiz. Ortiz argues that, "[d]espite [Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales' denial], there is already ample evidence to suggest that the defendants in this case were aware this was a coercive rather than consensual relationship and therefore knew of the dangers to Plaintiff because of his relationship with John Bearden." Response to Motion for Summary Judgment on Qualified Immunity ¶ 39, at 19, filed February 5, 2019 (Doc. 61)("MSJ Response"). Ortiz is unable, however, to present "ample evidence" to support his argument that the Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales were aware that Bearden was raping him. Ortiz further asserts that


the sexual relationship between Ortiz and Bearden violated both prison policy and the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309 ("PREA"), but this fact has no bearing on whether Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales actually and subjectively believed that Ortiz' health and safety were at risk, and did nothing about it. MSJ Response ¶¶ 40-43, at 19-20. "'It is not enough merely to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly.'" Gallegos v. Bernalillo Cnty. Bd. Of Commr's, No. CIV 16-0127, 2018 WL 3210531, at *30 n.49 (D.N.M. June 29, 2018)(Browning, J.)(quoting Farmer v. Brennan, 511 U.S. at 843 n.8). Accordingly, Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales did not act with deliberate indifference, because they were not subjectively aware of a substantial risk of serious harm to Ortiz.

As to issue (iv), the Court concludes that, even if Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales acted with deliberate indifference, they are entitled to qualified immunity, because Ortiz has not met his burden of demonstrating that his asserted rights are clearly established. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834, at *10 (D.N.M. April 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Under § 1983, a plaintiff may seek money damages from state government officials who have violated his or her constitutional or statutory rights. To ensure, however, that fear of liability will not "unduly inhibit officials in the discharge of their duties," Anderson v. Creighton, 483 U.S. 635, 638 (1987), the

officials may assert qualified immunity; so long as they have not violated a "clearly established" right, the officials are shielded from personal liability. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs" and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205 (2001). When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated the plaintiff's constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). See also Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1079 (D.N.M. 2016)(Browning, J.), aff'd. 863 F.3d 1226 (10th Cir. 2017).

Qualified immunity requires a plaintiff to demonstrate that the right allegedly violated was clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d at 1107. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). The plaintiff bears the burden of showing that the law is clearly established. See Kerns v. Bader, 663 F.3d 1173, 1180 (10th Cir. 2011). "[T]he law is not clearly established where 'a distinction might make a constitutional difference.'" McGarry v. Board of County Commissioners for County of Lincoln, 294 F. Supp. 3d 1170, 1187 (D.N.M. 2018)(Browning,

J.)(quoting Kerns v. Bader, 663 F.3d at 1188). The Court has observed that "the Supreme Court has sent out unwritten signals to the lower courts that [a] factually identical or a highly similar factual case is required for the law to be clearly established, and the Tenth Circuit is now sending those unwritten signals to the district courts." Nelson v. City of Albuquerque, 283 F. Supp. 3d 1048, 1107 n.44 (D.N.M. 2017)(Browning, J.), rev'd on other grounds, 921 F.3d 925 (10th Cir. 2019). See White v. Pauly, 137 S. Ct. 548, 552 (2017)("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.").

Here, Ortiz has not presented any governing case holding that a prison official who subjectively believes that a relationship between another prison official and an inmate is consensual, and therefore the prison official fails to intervene immediately, is subject to § 1983 liability. Ortiz alleges that Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales violated the Fourth Amendment, the Eighth Amendment's Cruel and Unusual Punishment Clause, the Fourteenth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection Clause. First, as to the Fourth Amendment claim, Ortiz argues that a "prisoner has a constitutional right to bodily privacy," which the Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales allegedly violated. MSJ Response ¶ 16, at 8. Ortiz cites several cases from the Tenth Circuit and other federal Courts of Appeals to support his claim to be secure from government intrusion. See e.g., Dubbs v. Head Start, Inc., 336 F.3d 1194, 1205 (10th Cir. 2003)("The Fourth Amendment protects the right of the people to be 'secure in their persons' from government intrusion, whether the threat to privacy arises from a policeman or a Head Start administrator.")(quoting U.S. Const. amend. IV); Boxer X v. Harris, 437 F.3d 1107, 1110-11 (11th Cir. 2006)(reaffirming "a prisoner's constitutional right to bodily privacy" and "emphasizing the harm of compelled nudity"); Fortner v. Thomas, 983 F.2d 1024, (11th Cir. 1993)(joining "other circuits in recognizing a prisoner's

constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating'")(quoting Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981); Padgett v. Donald, 401 F.3d 1273, (2005)(recognizing that the Fourth Amendment right to privacy extends to interests "involving certain compelled nudity").  None of these cases is on point.  While Ortiz alleges and provides some evidence that Bearden made certain "predatory" advances toward Ortiz, such as "unwanted touching and groping [of] Mr. Ortiz' body, including his buttocks and genitalia," this conduct does not directly implicate Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales, who subjectively believed that Ortiz and Bearden had developed a consensual relationship.  Complaint, at ¶ 18, at 5.  Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales have cited no cases in which the court concludes that a supervisor violated an inmate's Fourth Amendment rights by failing to intervene and stop a relationship which the supervisor believed to be consensual.  Because Ortiz has not met his burden of showing a factually analogous case, the Court will grant the MSJ with respect to Ortiz' Fourth Amendment claim.

Next, in support of his Eighth Amendment claim, Ortiz cites several cases from other federal Courts of Appeals in which the courts concluded that a prison guard's sexual abuse of an inmate violates the United States Constitution. See e.g., Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)("Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers no shield . . . . [T]he Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault.")(emphasis in original); Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006)("[W]e join other circuits recognizing that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."); Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir.

1997)("We therefore conclude that sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment."). None of these cases is on point. While it may be clearly established law that a prison guard violates the Eighth Amendment by sexually abusing an inmate, Ortiz has not pointed to any case holding or strongly suggesting that a prison official, who believes that a relationship between another prison guard and inmate is consensual and thus does not intervene, has violated the Eighth Amendment.

Ortiz also draws support from Farmer v. Brennan, 511 U.S. 825 (1994), which is about a transgender inmate who alleged that prison officials acted with deliberate indifference when they put the inmate in a prison "despite knowledge that the penitentiary had a violent environment and a history of inmate assaults," and despite knowledge that a transsexual inmate who "projects feminine characteristics would be particularly vulnerable to sexual attack." Farmer v. Brennan, 511 U.S. at 831 (internal quotation marks omitted). The Supreme Court in Farmer v. Brennan held that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. at 831 Farmer v. Brennan, too, is inapplicable to this case, because the Court has concluded that Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales were not subjectively aware that Ortiz faced a substantial risk of serious harm. Because Ortiz has not met his burden of showing a factually analogous case, the Court will grant the MSJ with respect to Ortiz' Eighth Amendment claim.

Next, as to his Fourteenth Amendment due process claims, Ortiz argues that he was denied due process because Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales turned a "blind eye" to Ortiz and Bearden's relationship to ensure that they could successfully catch Bearden smuggling drugs into the prison and thereby failed to protect Ortiz. Complaint ¶¶ 17-24, at 9-12.

Ortiz argues that the "[l]aw clearly establishes a substantive due process claim for violations by state actors when an act is more than an ordinary tort, [but] rather it shocks the conscience of the court," MSJ Response ¶ 18, at 9, and Ortiz cites several Tenth Circuit cases in support of his argument, see Abeyta By and Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1257-58 (10th Cir. 1996)(recognizing that "actions which inflict only psychological damage" may rise to the level of "shocking [] the conscience" and thereby "constitute a substantive due process violation"); Uhlrig v. Harder, 64 F.3d 567, 573-75 (10th Cir. 1995)(concluding that, although certain actions which "shock the conscience of federal judges" may constitute substantive due process violations, the decision to terminate a special unit in a mental hospital reserved for the criminally insane which ultimately led to the death of a therapist working with the general hospital population was not so "outrageous . . . so as to shock the conscience")(internal quotations omitted); Dubbs v. Head Start, Inc., 336 F.3d 1194, 1203 (10th Cir. 2003)(recognizing a parent's Fourteenth Amendment "right to direct and control the medical treatment of their children," and noting that the "'shocks the conscience' standard . . . does not exhaust the category of protections under the Supreme Court's substantive due process jurisprudence").

Ortiz does not show how Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales' conduct constitutes a substantive due process violation under clearly established law. First, none of the cases cited by Ortiz addresses the constitutional rights of prison inmates; therefore, the facts are not analogous to this case. Second, Ortiz argues that the "harms associated with the prison rape in this case which results in anal penetration should absolutely shock the conscience and implicate clearly established and fundamental human rights long protected by the Fourteenth Amendment." MSJ Response ¶ 18, at 10. Ortiz' assertion misses the point. The primary issue is not whether Bearden's allegedly non-consensual sexual relationship violates Ortiz' substantive

due process rights, but whether Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales, who subjectively believed that Ortiz and Bearden maintained a consensual relationship, violated Ortiz' substantive due process rights by not intervening and ending the relationship.  Ortiz does not point to any case establishing that a prison official's failure to intervene into the relationship between a prison official and an inmate either "shocks the conscience" or violates a specific fundamental right under the Fourteenth Amendment's Due Process Clause.  Because Ortiz has not met his burden of showing a factually analogous case, the Court will grant the MSJ with respect to Ortiz' Fourteenth Amendment due process claim.

Finally, as to Ortiz' Fourteenth Amendment equal protection claim, Ortiz argues that he was denied equal protection, because Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales treated him differently than other inmates, and that the Lucero-Ortega, Perez, Baca, Trujillo, Nunez, and Gonzales' "discriminatory actions are representative of an official policy or custom of the institution or are taken by an official with final policy making authority."  Complaint ¶¶ 19-24, at 10-12.  Ortiz cites only one case in support of his equal protection argument.  See Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1249-51 (10th Cir. 1999).  In Murrell v. School District No. 1, the Tenth Circuit held that "[i]t is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause."  186 F.3d. at 1249.  Like the plaintiff's argument in Murrell, Ortiz' argument does not indicate how Bearden's alleged discriminatory actions are attributable to the prison's official policy or custom.  See Murrell v. School District No. 1, 186 F.3d at 1249 ("[A]cts of sexual harassment by a student directed solely at [a teacher] do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter.").  Nor does Ortiz show an official with final policymaking authority took such actions.  See Murrell v. School District No. 1, 186 F.3d at 1249

("[P]laintiffs' complaint gives no indication that either the principal or the teachers possessed the 'final policymaking authority' the Supreme Court requires for purposes of establishing municipal liability under section 1983 on the basis of a decision specific to a particular situation.")(quoting Randle v. City of Aurora, 69 F.3d 441, 447 (1995)). Because Ortiz has not met his burden of showing a factually analogous case, the Court will grant the MSJ with respect to Ortiz' Fourteenth Amendment equal protection claim.

**IT IS ORDERED** that (i) the State of New Mexico Risk Management Division's Opposed Motion to Intervene, filed November 6, 2018 (Doc. 36), is granted; (ii) Defendants Roberta Lucero-Ortega, Pete Perez, Jason Baca, Gary Trujillo, Damien Nunez, and Carlos Gonzales' Motion for Summary Judgment as to Second Amended Complaint Based on Qualified Immunity, filed December 7, 2018 (Doc. 49), is granted; and (iii) all the claims against Defendants Roberta Lucero-Ortega, Pete Perez, Jason Baca, Gary Trujillo, Damien Nunez, and Carlos Gonzales are dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Elias Barela
Elias Barela, Attorney at Law, LLC
Los Lunas, New Mexico

    *Attorney for the Plaintiff*

Douglas E. Gardner
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant John Bearden*

Michael Dickman
Law Office of Michael Dickman
Santa Fe, New Mexico

>*Attorney for Defendants State of New Mexico, New Mexico Corrections Department, Western New Mexico Correctional Facility, Roberta Lucero-Ortega, Pete Perez, Jason Baca, Gary Trujillo, Damien Nunez, and Carlos Gonzales, and Intervenor New Mexico Risk Management Division*